**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LA-QUANNE GILLARD ,**

                         **Plaintiff,**                    **5:11-cv-1173**
                                                           **(GLS)**

            **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

                         **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                          BRANDON W. SAWYER, ESQ.
300 S. State Street                        KAREN S. SOUTHWICK, ESQ.
Suite 420
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                  AMANDA J. LOCKSHIN
United States Attorney                     JASON P. PECK
100 South Clinton Street                   Special Assistant U.S. Attorneys
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904

_____

        [1] The Clerk is directed to substitute Carolyn W. Colvin, Acting
Commissioner of Social Security, for defendant Michael J. Astrue, and
amend the caption accordingly.  _See_ Fed. R. Civ. P. 25(d).

New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff La-Quanne Gillard challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) and seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Gillard's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On August 27, 2009, Gillard filed applications for Child's Insurance Benefits (CIB) and SSI under the Social Security Act ("the Act"), alleging disability since October 1, 2008.  (*See* Tr.[2] at 11, 44-45, 167-69.)[3]  After his application was denied, (*see id.* at 47-54), Gillard requested a hearing

_____

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 11.)

[3] Although it is clear from the record that Gillard applied for CIB, (*see* Tr. at 45, 47-50), the application is not contained in the Administrative Transcript.

before an Administrative Law Judge (ALJ), which was held on April 6, 2011 (*see id.* at 20-40, 55).  On May 20, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-5, 8-19.)

Gillard commenced the present action by filing his Complaint on September 30, 2011 wherein he sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 10, 11.) Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 15, 19.)

## III.  <u>Contentions</u>

Gillard contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 15 at 9-21.)  Specifically, Gillard claims that: (1) the ALJ failed to develop the record; (2) the residual functional capacity (RFC) determination is unsupported by substantial evidence and is the product of legal error; (3) his credibility was improperly assessed; (4) the step five determination is unsupported by substantial evidence and is the product of legal error; (5)

the step two determination with respect to his back pain is unsupported by

substantial evidence; and (6) the Appeals Council erred in failing to grant

review or remand in light of new and material evidence.  (*See id.*)  The

Commissioner counters that the appropriate legal standards were used by

the ALJ and her decision is supported by substantial evidence.  (*See* Dkt.

No. 19 at 11-21.)

## IV.  **Facts**

The court adopts the parties' undisputed factual recitations.  (*See*

Dkt. No. 15 at 2-7; Dkt. No. 19 at 1-9.)

## V.  **Standard of Review**

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g)[4] is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

Mar. 19, 2008).  In addition to showing a disability under the five-step

---

[4] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.  As such, parallel citations to the Regulations governing SSI are omitted.

4

sequential analysis, a claimant seeking CIB must also be the child of an insured person who is entitled to old-age or disability benefits or who has died, be dependent on the insured, be unmarried, and, as relevant here, demonstrate that his disability began before age twenty-two.  *See* 20 C.F.R. § 404.350(a).

## VI.  Discussion

### A.    Duty to Develop the Record

Gillard argues first that the ALJ violated her duty to develop the record by failing to: (1) request a treating source opinion of his functional limitations; and (2) order a consultative psychiatric examination.  (*See* Dkt. No. 15 at 9-13.)  The Commissioner counters that the ALJ fulfilled her duty because, among other things, Gillard's counsel stated at the administrative hearing that no treating source opinions would be given.  (*See* Dkt. No. 19 at 11-12.)  Moreover, the Commissioner argues that a consultative psychiatric exam was not necessary because no evidence, including his own testimony, indicated that Gillard suffered any work-related mental limitations.  (*See id.* at 12-13.)  The court agrees with the Commissioner.

While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit.  *See Guile v.*

*Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010).  Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence.  *See* 20 C.F.R. § 404.1520b(a).  Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  Moreover, the ALJ is afforded discretion in determining whether a consultative exam is warranted.  *See* 20 C.F.R. § 404.1519a. As with development of the record generally, "the ALJ is to order a consultative exam only when [the relevant medical evidence of record] is not 'sufficient' to make a decision."  *Firpo v. Chater*, 100 F.3d 943, 1996 WL 49258, at *2 (2d Cir. 1996).  Thus, "'[i]f the evidence does not support work-related functional limitations resulting from [a] possible mental impairment, additional development, including review by a psychiatrist or psychologist is not necessary.'"  *Bronzene v. Astrue*, No. 1:10-CV-00967, 2012 WL 602142, at *8 (N.D.N.Y. Feb. 23, 2012) (quoting *Haskins v. Comm'r of Soc. Sec.*, Civ. No. 5:05-CV-292, 2008 WL 5113781, at *7 n.5 (N.D.N.Y. Sept. 11, 2008)).

Here, because the record was sufficiently robust for the ALJ to make a disability determination, she was not obligated to further develop the record by either: (1) requesting function by function assessments from Gillard's treating physicians; or (2) ordering a consultative psychiatric examination.  *See Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011).  In this case, the record contains treatment records from various treating sources including physicians Daniel Murphy and Colin Harris, nurse practitioner Alita DeJong, and nurse Sally Palmer.  (*See* Tr. at 301-18, 327-30, 336-39, 342, 345, 347-48, 351-52, 355-56, 361-62, 368-73.)  In addition, the record contains physical therapy progress notes and laboratory findings, including x-rays, a bone scan, an MRI, and an EMG.  (*See id.* at 255, 261, 263, 310, 313-16, 320-25, 329-30, 340.)  Moreover, the record contains an assessment of Gillard's functional abilities by consultative examiner Kalyani Ganesh.  (*See id.* at 276-79.)  Although the record lacks functional assessments from Gillard's treating physicians, the ALJ questioned Gillard's counsel at the administrative hearing regarding the lack of such opinion evidence and was informed that "none would be given."  (*Id.* at 23); *see* 20 C.F.R. § 404.1512(e)(2) (2012) (explaining that the ALJ "may not seek additional

7

evidence or clarification from a medical source when [she] know[s] from past experience that the source either cannot or will not provide the necessary findings").[5]  Subsequently, Gillard's counsel reported to the ALJ that all medical records had been submitted and requested that the ALJ "close the file and render a decision."  (Tr. at 252.)

As for the failure to order a consultative psychological exam, the medical evidence and testimony in the record do not establish that such an examination was necessary in order for the ALJ to reach a decision with regard to the severity of Gillard's depression and/or anxiety.  Specifically, in March and April 2010 Gillard complained of depression and anxiety to Palmer, who assessed him as suffering from such impairments.  (*See id.* at 305-07.)  Thereafter, Gillard failed to seek any treatment for his mental impairments until April 2011 at which time DeJong assessed Gillard as suffering from depression and prescribed him medication.  (*See id.* at 434-35.)  Notably, neither Palmer nor Dejong are "acceptable medical sources" and, therefore, their treatment records "cannot establish the existence of a

---

[5] As of March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 to remove subsection (e).  *See Lowry v. Astrue*, 474 F. App'x. 801, 805 n.2 (2d Cir. 2012).  However, this court should apply the regulation in force at the time of the ALJ's opinion. *See id.*

medically determinable impairment," but can only "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008).  In any event, there is no evidence that Gillard's mental impairments limited his ability to function in any significant way. Indeed, Gillard completed a function report in October 2009 and reported that he "sometimes . . . get[s] depress[ed]," however, he also reported having no difficulty getting along with others, including those in positions of authority, paying attention, following instructions, or remembering things, and noted no changes in his social activities due to his impairments.  (Tr. at 213; *see id.* at 215-17.)  Further, at the administrative hearing, Gillard did not testify to any limitations caused by his depression and confirmed that he had not seen a psychologist or psychiatrist, although he was taking depression medication.  (*See id.* at 35.)

For the foregoing reasons, highlighted by the sufficiency of the record and the lack of any obvious gaps, the ALJ did not violate her duty to develop the record.  *See Brown v. Astrue*, No. 11-CV-6392T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012).

## B.   RFC Determination

Next, Gillard claims that the RFC determination is infirm because the ALJ erred in weighing the opinion of Dr. Ganesh.  (*See* Dkt. No. 15 at 13-15.)  The Commissioner responds, and the court agrees, that the ALJ properly relied on Dr. Ganesh's opinion to determine Gillard's RFC.  (*See* Dkt. No. 19 at 13-15.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence[6] in the record.  *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ gave "great weight" to Dr. Ganesh's opinion that Gillard

---

[6] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

suffered no gross physical limitation in his ability to sit, stand, walk, or use his upper extremities.  (Tr. at 18; *see id.* at 278.)  Gillard argues that Dr. Ganesh's opinion is unclear and incomplete because she did not indicate the length of time that Gillard could sit, stand, or walk or the frequency with which he could use his upper extremities.  (*See* Dkt. No. 15 at 14.)  This argument is without merit.  Indeed, Dr. Ganesh clearly opined that Gillard did not suffer any limitations due to his impairments after examining Gillard and finding full range of motion in his cervical spine, lumbar spine, elbows and right shoulder, with a reduced range of motion in his left shoulder and wrist.  (*See* Tr. at 278.)  According to Dr. Ganesh, Gillard suffered no motor or sensory deficits, muscle atrophy, redness, heat, swelling, or effusion.  (*See id.*)  Dr. Ganesh also found that Gillard had 5/5 strength in his upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally.  (*See id.*)  Thus, Dr. Ganesh's ultimate opinion is well supported by his extensive examination and is not in any way conclusory.  *See Armstrong v. Comm'r of Soc. Sec.*, No. 05-CV-1285, 2008 WL 2224943, at *4 n.6 (N.D.N.Y. May 27, 2008).

Gillard also contends that Dr. Ganesh's opinion is contradicted by the opinions of Palmer and DeJong as well as Gillard's physical therapy

treatment records.  (*See* Dkt. No. 15 at 15.)  Specifically, in January 2010, Plamer advised that Gillard could not lift more than five pounds at work. (*See* Tr. at. 309.)  Thereafter, in January 2011, DeJong provided Gillard a note for work which, according to Gillard, limited him to lifting no more than five pounds, standing for ten minutes, and walking for twenty minutes. (*See id.* at 38-39, 351.)  Finally, upon examination in December 2010 and May 2011, Gillard's grip strength was found to be reduced.  (*See id.* at 356, 394.)

As mentioned above, Palmer and DeJong are not "acceptable medical sources" and, thus, their opinions are not entitled to controlling weight, but rather "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-03p, 71 Fed. Reg. at 45,595; *see* 20 C.F.R. § 404.1513(a), (d)(1); *Crysler*, 563 F. Supp. 2d at 434-35.  Indeed, the ALJ did consider the treatment records of Palmer and DeJong and specifically noted that Gillard "exhibited some tenderness in his hands and sometimes had decreased grip strength and positive Tinel's and Phalen's signs."  (Tr. at 16-17.)  However, the ALJ also correctly noted that the clinical findings of record demonstrate that Gillard has "exhibited relatively few abnormalities

related to his carpal tunnel syndrome." (*Id.* at 16.)

Here, as the ALJ concluded, Dr. Ganesh's opinion is consistent with the medical evidence of record. (*See id.* at 18.)  Notably, a July 2009 x-ray of Gillard's left elbow was negative, an August 2009 x-ray of his left wrist revealed no bony involvement or bony acute disease, and February 2010 x-rays of his wrists and hands were negative except for the finding of a "[s]mall accessory ossicle or old trauma" in his left wrist. (*Id.* at 316, *see id.* at 255, 261, 263, 313-15.)  In April 2010, an EMG showed Gillard suffered from "mild right carpal tunnel syndrome" and a CT scan of his brain was negative, in December 2010, x-rays of his cervical spine showed no significant abnormality, and, in February 2011, a bone scan revealed no abnormalities in his cervical spine and an MRI of his spinal cord was unremarkable. (*See id.* at 310, 312, 329-30, 332-33, 338.)  In addition to these findings, Gillard exhibited normal grip strength, range of motion, and motor exams of both arms on numerous occasions. (*See id.* at 253, 261, 264, 308, 330, 337, 342.)  Moreover, in February 2011, Gillard reported that most of his symptoms had been relieved by a "right carpal tunnel injection." (*Id.* at 327.)

Ultimately, the ALJ's determination regarding the weight of Dr.

Ganesh's opinion is supported by substantial evidence and, accordingly, she properly relied on it in making her RFC determination. (*See id.* at 17-18.) Thus, the court rejects Gillard's argument that the RFC assessment is unsupported by substantial evidence.

**C.    Credibility Determination**

Gillard next asserts that the ALJ erred in assessing his credibility by improperly concluding that his activities of daily living, including smoking, and his ability to work part time undercut his claims of disability. (*See* Dkt. No. 15 at 16-17.) The court disagrees.

"[A]fter weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted). Here, the ALJ properly found Gillard's statements concerning the intensity, persistence, and limiting effects of his symptoms partially credible. (*See* Tr. at 17.) The ALJ considered Gillard's self-reported activities of daily living, his ability to work during the period of

14

alleged disability, and the medical evidence, including opinion evidence, of record.  (*See id.* at 16-18.)

As the ALJ explained, Gillard's claims of limitation were belied by the fact that he worked approximately ten hours a week as a FedEx package handler from January 2009 until January 2011 when he went on medical leave due to carpal tunnel surgery.  (*See id.* at 17, 25-26, 187.)  Indeed, prior to taking medical leave in January 2011, Gillard applied for lighter duty work, hoping to do administrative work.  (*See id.* at 38.)  The ALJ also noted that, despite claiming an inability to lift more than five pounds, Gillard injured himself, nine months after his alleged onset date, while moving furniture.  (*See id.* at 17, 215, 253.)  In addition to working, Gillard's activities of daily living include showering, bathing, and dressing himself, preparing microwave meals, watching television, listening to the radio, reading, and socializing.  (*See id.* at 212, 241, 276.)  Further, Gillard smokes daily, which the ALJ observed requires manipulative and fine motor activity, despite his allegations of limitation in the use his of hands and fingers.  (*See id.* at 17, 28-29, 36-37, 276.)  In sum, the ALJ's credibility determination was sufficiently articulate and based on substantial evidence and is, therefore, conclusive.

**D.**   **Step Five Determination**

Gillard also takes issue with the ALJ's finding at step five.  (*See* Dkt. No. 15 at 17-19.)  Specifically, Gillard alleges that "errors in RFC and in determining [his] credibility, along with the new and material evidence submitted to the Appeals Council render the [s]tep [five] determination unsupported by substantial evidence."  (*Id.* at 18.)  Further, Gillard contends that the ALJ erred in relying solely on the medical-vocational guidelines in finding him not disabled, as he suffered from significant nonexertional manipulative limitations.  (*See id.*)  The court finds no merit in these arguments, largely for reasons already articulated.

Reliance on the Medical-Vocation Guidelines is improper "when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the" guidelines.  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  Instead, where nonexertional impairments significantly diminish a claimant's ability to work, "the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Id.*

16

As discussed above, the ALJ's RFC determination—that Gillard was able to lift, carry, push, pull, and manipulate items weighing ten pounds or less—and credibility assessment are sound and supported by substantial evidence.  *See supra* Part VI.B-C; (*see* Tr. at 15.)  In addition, as discussed below, the Appeals Council's decision to deny review of the ALJ's decision after considering the new evidence, was appropriate.  *See infra* Part VI.F. Because Gillard's nonexertional manipulative limitations had little or no effect on the occupational base of unskilled sedentary work, reliance on the grid guidelines was appropriate.  (*See* Tr. at 18-19); *see Bapp*, 802 F.2d at 605 ("If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate.").

## E.   **Step Two Determination**

Next, Gillard claims that the ALJ erred in failing to find his back pain to be a severe impairment at step two of the sequential analysis.  (*See* Dkt. No. 15 at 19-20.)  According to Gillard, records submitted to the Appeals Council, including an x-ray of his lumbosacral spine and physical therapy progress notes, evidence this severe impairment and, accordingly, the Appeals Council erred in failing to grant review or remand.  (*See id.* at 19.) This argument is also unavailing.

At step two of the sequential analysis, the ALJ must "determine whether the claimant has a severe impairment." *Christiana*, 2008 WL 759076, at *3; *see* 20 C.F.R. § 404.1520(a)(4)(ii), (c).  A "severe impairment"  is "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. § 404.1521(b)(1).  "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  Indeed, when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities," a finding of "not severe" is warranted.  SSR 85-28, 1985 WL 56856, at *3 (1985); *see* 20 C.F.R. § 404.1521(a).  Notably, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis

continues and the ALJ later considers the impairment in his residual functional capacity (RFC) determination.  *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

        In this case, at step two, the ALJ considered Gillard's complaints of low back pain and concluded that it was not a severe impairment as there was no objective medical evidence that he had been treated for such condition.  (*See* Tr. at 15.)  Thereafter, in making her RFC determination, the ALJ again considered Gillard's complaints of a "burning pain in his low back that lasts for [ten to twenty] minutes after he stands up."  (*Id.* at 16, 33.)  Following issuance of the ALJ's decision, but prior to a determination by the Appeals Council, Gillard submitted an x-ray taken on March 21, 2011 which found "a transitional lumbosacral vertebral body."  (*Id.* at 433.)  Gillard also submitted to the Appeals Council treatment records from physical therapy he received for carpal tunnel and lumbar spine pain from March 2011 through May 2011.  (*See id.* at 385-99.)  Gillard notes that on March 23, 2011 straight leg raises were positive at fifty degrees with sharp pains down his lower extremities.  (*See* Dkt. No. 15 at 19; Tr. at 386.)

        Considering this additional evidence, the court agrees with the

Commissioner that the ALJ properly determined that Gillard's back pain

was not a severe impairment.  (*See* Dkt. No. 19 at 18-19.)  Initially, the

March 21, 2011 x-ray revealed "no acute disease" and was described in

physical therapy progress notes as "normal."  (Tr. at 385, 433.)  Further,

the only acceptable medical source to render an opinion as to Gillard's

functional limitations was Dr. Ganesh, who found Gillard to be in no acute

distress, with a normal gait and stance, and possess the ability to walk on

his heels and toes, squat in full, change for his exam, get on and off of the

exam table, and rise from a chair without difficulty.  (*See id.* at 277); *see* 20

C.F.R. § 404.1513(a).  Dr. Ganesh reported that Gillard exhibited a full

range of motion in his lumbar spine, 5/5 strength in his lower extremities,

and negative straight leg raising bilaterally.  (*See id.* at 278.)  Based on this

examination, Dr. Ganesh opined that Gillard suffered no physical

limitations.  (*See id.*)  Consistent with Dr. Ganesh's examination, in January

and February 2011, Dr. Harris noted that Gillard "walks with no apparent

pain or difficulty" and, in his January 2011 evaluation, exhibited a normal

lower extremity neurologic exam, including a normal sensory exam, 5/5

motor exam, and "2+" reflex exam.  (*Id.* at 329-30, 337-38.)  Thus, although

Gillard received some medical treatment for his lower back pain, the ALJ

did not err in determining that it did not constitute a severe impairment. (*See id.* at 15.)  In any event, during the subsequent RFC determination, the ALJ considered Gillard's complaints of low back pain and the medical evidence from sources who examined his lower back.  (*See id.* at 15-18.) Accordingly, there is no basis to remand this matter based upon her step two analysis.  *See Tryon*, 2012 WL 398952, at *4.

Because the additional evidence submitted to the Appeals Council does not render the ALJ's step two determination contrary to the weight of the evidence, the Appeals Council properly declined to remand the case on this basis.  *See Perez*, 77 F.3d at 46 (explaining that "[w]hen the Appeals Council denies review after considering new evidence, [courts] simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]"); *infra* Part VI.F.

## F.   Appeals Council Review

Lastly, Gillard contends that the Appeals Council erred by failing to remand based on evidence submitted to it after the ALJ's decision.  (*See* Dkt. No. 15 at 20-21.)  Specifically, Gillard contends that physical therapy reports and an opinion from his treating physician, provided a basis to

review the ALJ's decision.  (*See id.*)  The Commissioner counters, and the

court agrees, that the records presented to the Appeals Council provided

no basis to change the ALJ's decision.  (*See* Dkt. No. 19 at 20-21.)

The Appeals Council shall consider "new and material" evidence if it

"relates to the period on or before the date of the [ALJ] hearing decision."

20 C.F.R. § 404.976(b)(1); *see Perez*, 77 F.3d at 45.  The Appeals Council

"will then review the case if it finds that the [ALJ]'s action, findings, or

conclusion is contrary to the weight of the evidence currently of record."  20

C.F.R. § 404.970(b).  However, even if "the Appeals Council denies review

after considering new evidence, the [Commissioner]'s final decision

necessarily includes the Appeals Council's conclusion that the ALJ's

findings remained correct despite the new evidence."  *Perez*, 77 F.3d at 45

(internal quotation marks and citation omitted).  Accordingly, the additional

evidence becomes part of the administrative record reviewed by the district

court.  *Id.* at 45-46.

Here, after considering the new evidence presented to it, the Appeals

Council properly determined that it did not provide a basis for changing the

ALJ's decision.  (*See* Tr. at 1-5.)  The physical therapy reports submitted to

the Appeals Council, as discussed above, do not add so much to the

record as to displace the substantial evidence—including the opinion of Dr. Ganesh—supporting the ALJ's RFC determination.  *See supra* Part VI.E. Further, because the determination of disability is a matter reserved to the Commissioner, "there is no reasonable probability" that Dr. Murphy's April 2011 note, stating that Gillard was to refrain from work until further notice, "would have caused the Commissioner to decide the issue differently." *Briggs v. Astrue*, No. 09-CV-1422, 2011 WL 2669476, at *15 (N.D.N.Y. Mar. 4, 2011); *see* 20 C.F.R. § 404.1527(d)(1), (3); (*see* Tr. at 407.)

**G.** **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Gillard's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 12, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court